UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BREWFAB, LLC,

       Plaintiff,

v.                       Case No. 8:20-cv-2031-VMC-SPF

3 DELTA, INC., and
GEORGE RUSSO,

       Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant George Russo's Motion for Summary Judgment (Doc. # 75) and Plaintiff BrewFab, LLC's Cross-Motion for Summary Judgment (Doc. # 76), filed August 5, 2021, and August 26, 2021, respectively. The parties have responded and replied to each Motion. (Doc. ## 81-82). For the reasons set forth below, BrewFab's Motion is granted, and Russo's Motion is denied.

I.   **Background**

The parties each seek summary judgment exclusively on Count II of BrewFab's Amended Complaint —Russo's alleged breach of personal guaranty. (Doc. # 30; Doc. ## 75-76).

George Russo is the President of 3 Delta, Inc. (Doc. # 76-2 at 14). 3 Delta was formed to develop a water-based CBD

oil extraction machine, which could have applications in the sport and health product industries. (Doc. # 76-3 at ¶¶ 3-4; Doc. # 76-10 at 47:1-48:20). Russo and other investors financed 3 Delta's operations while VP/Chief Science Officer Michael Turcotte led the design and development of the machinery. (Doc. # 76-10 at 54:16-55:21). According to Chief Engineer Michael Zumpano, Russo was known on occasion to transfer funds from his personal accounts to 3 Delta's business accounts. (Doc. # 76-14 at 195:4-25; 196:1-2). In 2018, 3 Delta hired BrewFab, a "brewery equipment provider and metal fabricator," to develop its concept machinery. (Doc. # 30 at ¶¶ 8-9; Doc. # 76-3 at ¶ 3-4).

Turcotte worked with BrewFab at its St. Petersburg, Florida facility to build 3 Delta's machinery. (Doc. # 76-3 at ¶ 4). The parties agree that there was no formal contract in place with respect to the development of 3 Delta's machinery. (Doc. # 76-3 at ¶ 4; Doc. # 81-2 at ¶ 3). The parties instead proceeded under an oral agreement, wherein BrewFab would provide 3 Delta invoices for work performed that 3 Delta would pay in turn. (Doc. # 76-3 at ¶ 4). The first invoice was issued to 3 Delta in December 2018. (Id.).

The parties continued to collaborate and develop 3 Delta's machinery under the oral agreement until December

2

2019. (Id. at ¶¶ 5-6). Around that time, 3 Delta ceased paying BrewFab's invoices. (Id. at ¶ 7). Without assurance for payment for past work or confidence in future payments, BrewFab ceased working and withheld shipment of certain equipment. (Id. at ¶¶ 7-8). The parties ultimately deadlocked — 3 Delta pressed BrewFab to continue working and deliver promised equipment, while BrewFab insisted that 3 Delta pay its outstanding invoices first. (Id. at ¶¶ 7-9). BrewFab co-owner Kyle Cureton sent Mr. Turcotte and other 3 Delta employees an email on January 23, 2020, affirming BrewFab would not continue to ship equipment until 3 Delta paid its outstanding invoices. (Doc. # 76-4). BrewFab provides a host of text messages and email communications between 3 Delta and BrewFab spanning from December 2019 to August 2020. (See generally Doc. # 76).

To resolve the issue, the parties held a conference call on January 30, 2020. (Doc. # 81-2 at ¶¶ 4-5). The call was attended by Russo, Zumpano, and BrewFab's president and co-owner, Rick Cureton. (Doc. # 81-1 at ¶ 4).

The parties provide conflicting reports of what was discussed on the call. Russo maintains that the purpose of the call was to address BrewFab's concerns of continuing work without a written agreement. (Id. at 5). On the other hand,

3

Rick Cureton indicates that the call was to address 3 Delta's outstanding invoices for work performed and to reiterate that no work would resume until the invoices were paid. (Doc. # 76-3 at ¶¶ 7-9). Rick Cureton attests that while on the call, Russo personally promised to pay 3 Delta's outstanding and future invoices. (Id. at ¶ 10). Russo vehemently denies making such a promise. (Doc. # 81-1 at ¶¶ 5-7).

Following the conference call, Russo sent Rick Cureton the following text message:

> As per our conversation on Jan 30th 2020 I george Russo from 3 Delta do promise to pay brew fab in full all outstanding bills as of this date and all agreed upon work done for 3 Delta future forward. I thank you for your patience.

(Doc. # 76-21). Relying on this text message, BrewFab carried on with shipping equipment and developing 3 Delta's machinery. (Doc. # 76-10 at 92:20-25; 93:1-9). Following BrewFab's persistence to collect on outstanding invoices, and after continuing to develop 3 Delta's machinery, 3 Delta instructed BrewFab to halt development on February 12, 2020. (Doc. # 76-3 at ¶ 14). By March 17, 2020, the machinery BrewFab helped fabricate for 3 Delta was in working order. (Doc. # 76-13 at 22:4-23:4).

On August 28, 2020, BrewFab filed the instant suit to recover their outstanding invoices issued to 3 Delta, which

to date surpass $350,000.00. (Doc. # 1 at ¶ 15). Through the operative Amended Complaint, BrewFab asserts six claims against 3 Delta and Russo. (Doc. # 30). BrewFab asserts claims against 3 Delta for breach of contract, accounts stated, an alternative claim for unjust enrichment, an alternative claim for quantum meruit, and a claim for possessory lien foreclosure. (Id. at 4-8). BrewFab asserts only one claim against Russo for breach of guaranty. (Id. at 5-6).

## II.  **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing

law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the Court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's

response consists of nothing "more than a repetition of his [conclusory] allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." <u>Shaw Constructors v. ICF Kaiser Eng'rs, Inc.</u>, 395 F.3d 533, 538-39 (5th Cir. 2004); <u>see also</u> <u>United States v. Oakley</u>, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed[.]" (citation omitted)).

## III. <u>Analysis</u>

A guaranty is a promise to pay the debt of another upon the default of the person primarily liable for payment or performance. <u>Fort Plantation Invs., LLC v. Ironstone Bank</u>, 85 So. 3d 1169, 1171 (Fla. 5th DCA 2012). In essence, a guaranty is a "collateral promise to answer for the debt or obligation

of another." <u>Fed. Deposit Ins. Ins. Corp. v. Univ. Anclote,</u> <u>Inc.</u>, 764 F.2d 804, 806 (11th Cir. 1985) (internal citations omitted). There are no magic words required to create a guaranty, and Florida courts instead look to the substance of the agreement to determine whether it constitutes a guaranty. <u>See</u> <u>e.g.</u>, <u>Robert C. Malt & Co. v. Carpet World Distribs.,</u> <u>Inc.</u>, 763 So. 2d 508, 510-11 (Fla. 4th DCA 2000) (interpreting a corporate officer's conditional promise to pay a corporation's debts as a personal guaranty notwithstanding that the promise was included in a lease addendum). Where the terms of the agreement are unambiguous, parol evidence of the parties' intent should not be considered. <u>Haggins v. Allstate</u> <u>Invs.</u>, 264 So. 3d 951, 954 (Fla. 4th DCA 2019).

The parties dispute (1) whether the text is a personal guaranty, and (2) if so, whether that personal guaranty is enforceable against Russo. The Court addresses each dispute in turn.

### A. <u>Russo's Text Message is a Personal Guaranty</u>

"Florida courts have consistently adhered to the general rule that an individual who executes a guarant[y] as an officer of a corporation by inserting his or her corporate title after their name on the document cannot defeat the purpose of the guarant[y] when, by its terms, the document

contains provisions for individual liability." Lab'y Corp. of Am. v. McKown, 829 So. 2d 311, 313 (Fla. 5th DCA 2002) (internal citations omitted). "Rather than relying on formulaic descriptions of the signor, Florida courts examine the meaning and intent of the entire contract in order to determine whether a signor has agreed to be personally liable." ASD Specialty Healthcare, Inc. v. Jupiter Hematology & Oncology Assocs., P.A., No. 10-80534-CIV, 2010 WL 11596318, at *3 (S.D. Fla. Oct. 1, 2010) (internal citations omitted), report and recommendation adopted, No. 10-80534-CIV, 2010 WL 11596319 (S.D. Fla. Oct. 20, 2010). As stated in Roy v. Davidson Equip. Inc., including an officer's corporate title on a guaranty

> standing alone and without more, would be the classic example of a corporate officer signing in a representative capacity only. But here there is much more. The instrument to which the signature was affixed was a guarant[y] of the corporate indebtedness of Roy Energy Corporation. For a corporation to guarantee its own debt would add nothing to its existing obligation and would be meaningless.

423 So. 2d 496, 496-97 (Fla. 4th DCA 1982). Florida courts have instead declined to interpret agreements as personal guaranties where ambiguities arose from conflicting provisions of an agreement. See, e.g., ASD, 2010 WL 11596318, at **4-5 (declining to impose personal liability against a

corporate officer who signed a prefatory section of a contract with his corporate designation); see also Ballas v. Lake Weir Light & Water Co., 130 So. 421, 426 (Fla. 1930) (finding corporate lability on a promissory note executed by a corporate agent who executed the note using a corporate seal).

Turning to the parties' positions, Russo argues that he signed the text in his corporate capacity by signing his name "[G]eorge Russo *from* 3 Delta." (Doc. # 75 at 8-9). Russo claims that

> The absence of the critical terms "personal" or "guarant[y]" from the Text Message render it insufficient as a matter of law to constitute an enforceable personal guaranty. The Text Message likewise does not specifically state in clear and unambiguous language that Mr. Russo was acting in a personal capacity – as opposed to a corporate representative capacity.

(Doc. # 81 at 3). Russo submits that there can be no personal guaranty as a matter of law absent this strict language. (Id.). BrewFab argues that Russo's signature as phrased creates a clear promise to finance 3 Delta's debts. (Doc. # 76 at 7-9). BrewFab further maintains that interpreting the text message as a corporate guaranty would result in an empty promise, as 3 Delta was already obligated to pay its outstanding invoices. (Id. at 9). Russo does not dispute that he authored and sent the text message. (Doc. # 75 at 3).

10

A review of Russo's text message reveals that the message
was a personal guaranty for 3 Delta's outstanding and future
invoices. The text message begins with the introduction,
"[a]s per our conversation on Jan 30th 2020 I george Russo
*from* 3 Delta." (Doc. # 76-21). Russo does not proffer himself
as a 3 Delta corporate representative. The phrase "from 3
Delta" merely identifies Russo as an individual generally
affiliated with 3 Delta. Notably here, Russo did not mention
his corporate title in the text message. (Id.). Even had he
done so, the weight of Florida authority holds that including
a guarantor's corporate title after his signature does not
affect the personal nature of the guaranty. See Great Lakes
Prods., Inc. v. Wojciechowski, 878 So. 2d 418, 420 (Fla. 3d
DCA 2004) (imposing personal liability against corporate
president who signed a promise to finance his corporation's
credit account with his corporate title); Lab'y Corp., 829
So. 2d at 313 (same); Saada v. Grumman Credit Corp., 583 So.
2d 430, 430-31 (Fla. 3d DCA 1991) (per curiam) ("We find no
error in the trial court finding that the appellant[]
individually guaranteed the obligation of a corporation in
which he was a principal . . . .").

The operative language of the guaranty follows that
Russo "do[es] promise to pay brew fab in full all outstanding

bills as of this date and all agreed upon work done for 3 delta future forward . . . ." (Doc. # 76-21). The promise of the guaranty further recognizes the distinction between Russo as an individual and Russo as a corporate officer. As he consistently argues, Russo had no personal obligations to pay for BrewFab's work before the text message. Yet, in an effort to ensure that BrewFab continued working, he promised to pay for both (1) BrewFab's outstanding invoices *owed by 3 Delta* and (2) all agreed upon work *for 3 Delta* in the future. (Doc. # 76-21).

As such, the text message acknowledges that 3 Delta was already indebted to BrewFab for past invoices and that Russo would personally finance 3 Delta's past and future invoices for the company's benefit. See also Egyptian Nav. Co. v. Uiterwyk, No. 83-334 CIV-T-10, 1988 WL 70047, at *2 (M.D. Fla. Jan. 7, 1988) ("The wording of the document obligates Uiterwyk to personally pay a debt that Uiterwyk Corporation was already obligated to pay. Nothing in the document, including the signature, supports the conclusion that the document is anything other than a personal guaranty.").

Additionally, if the Court were to follow Russo's reading of the text message, it would be interpreting the text message to permit 3 Delta to guarantee its existing

debts. Florida courts will not interpret a guaranty as allowing a corporation to guarantee its own existing debts. For instance, the court in <u>Robert Malt</u> observed that

> Although Susco's signature appears to be in his representative capacity only, that single signature, when considered with the language of paragraph nine, is sufficient to enforce the guaranty provision against him in his personal capacity. . . . To determine otherwise, that the individual was not personally obligated on the guaranty agreement, would render the guaranty agreement meaningless, as it does not make sense for the corporation to guarantee its own debt.

763 So. 2d at 510. <u>See also Lab'y Corp.</u>, 829 So. 2d at 314 ("The reason for the general rule is that '[t]o interpret the guaranty as being a corporate guaranty because the word president was added to [the] signature would result in the guaranty being meaningless and add nothing to the existing obligation of the corporation.") (internal citations omitted); <u>see also Cent. Nat. Bank of Miami v, Muskat Corp. of Am., Inc.</u>, 430 So. 2d 957, 958 (Fla. 3d DCA 1983) (collecting cases).

Interpreting Russo's guaranty as a corporate guaranty would create an "absurd result" that would render the guaranty null and void as the 3 Delta is already liable for its existing debts. <u>Lab'y Corp</u>, 829 So. 3d at 314. When considered as a whole, the text message memorializes Russo's promise to

fund BrewFab's past and future work for the benefit of 3 Delta. A contrary interpretation would be nonsensical.

The Court finds that text message is a personal guaranty under Florida law, which Russo signed as an individual. The Court now turns to Russo's arguments that the personal guaranty is unenforceable against him for lack of consideration and non-compliance with Florida's statute of frauds. (Doc. # 75 at 5-6, 9-10).

B. **The Guaranty Agreement is Supported by Consideration**

Russo alternatively argues that the personal guaranty is unenforceable against him because BrewFab did not provide him consideration "in his personal capacity." (Doc. # 75 at 9-10). In support, Russo highlights that no invoice was issued to him in his name and that BrewFab did not give him anything personally in exchange for the guaranty. (Doc. # 75 at 10). This argument fundamentally misconstrues Florida law regarding consideration.

Guaranty agreements require new consideration when they are executed after a principal obligation has been established. Lenbro Holding Inc. v. Falic, 503 F. App'x 906, 908 (11th Cir. 2013). A promise, no matter how slight, can constitute consideration so long as a party agrees to do something they are not already bound to do. Ashby v. Ashby,

14

651 So. 2d 246, 247 (Fla. 4th DCA 1995). Consideration can flow from one party to a third party; it is not required that consideration accrue to the party making the promise. See LSQ Funding Grp., L.C. v. EDS Field Servs., 879 F. Supp. 2d 1320, 1329 (M.D. Fla. 2012) (applying Florida law). Performing acts or services that one is not already obligated to perform is sufficient consideration under Florida law. See Lamborn v. Slack, 107 So. 2d 277, 281 (Fla. 2d DCA 1958) ("When plaintiff performed the services which defendant requested and thereafter held himself in position to further the negotiations, he furnished consideration to support defendant's promise.").

Here, Russo had no personal obligations to BrewFab before he sent the text message. Russo's promise to finance both 3 Delta's existing and future debts is certainly supported by consideration as he was under no prior obligation to pay for either. BrewFab's voluntary return to work and delivery of equipment unquestionably provided a benefit to 3 Delta. Florida law does not require that Russo personally receive consideration in exchange for his promise to bring 3 Delta's account up to date. LSQ, 879 F. Supp. 2d at 1330.

In light of Russo's promise to undertake 3 Delta's debts, BrewFab's continued labor, and the ultimate completion of the

15

contemplated machinery for 3 Delta, the Court finds that Russo's personal guaranty to BrewFab was supported by adequate consideration.

**C. Russo's Text Message is a Signed Writing That Satisfies Florida's Statute of Frauds**

Finally, Russo argues that the personal guaranty is unenforceable against him as it fails to satisfy Florida's statute of frauds. (Doc. # 75 at 5). However, in raising the issue, Russo curiously argues that the text message he authored does not comply with the statute of frauds because BrewFab has not established the existence of a valid personal guaranty:

> Here, [BrewFab] cannot even establish the existence of a valid contract with Mr. Russo that satisfies the Statute of Frauds. [BrewFab's] claim is not grounded upon any actual document or instrument entitled "Personal Guaranty" signed by Mr. Russo that was executed by Mr. Russo. Nor has [BrewFab] identified any such appropriated [sic] titled "Personal Guaranty" that was signed by Mr. Russo as an express guarantor in his personal capacity (as discussed further below). Indeed, the cursory, two-sentence Text Message that [BrewFab] relies upon entirely for its claim in Count II does not evidence any agreement or intent by Mr. Russo to personally guarantee the debts or financial obligations of 3 Delta. Glaringly missing from the Text Message is any language or reference to "personal guarantor" or "personally guarantee," or any other language that plainly and unambiguously obligated Mr. Russo to personally guarantee the debts or financial obligations of 3 Delta.

16

(Id. at 5-6). As an initial matter, the Court notes that Russo did not meaningfully advance a statute of frauds argument. Instead, Russo focused his efforts on evaluating the personal nature of the guaranty. (Id. at 5-7). The Court need not consider Russo's unsupported statute of frauds argument on this basis alone. See Herbert v. Architect of Capitol, 839 F. Supp. 2d 284, 298 (D.D.C. 2012) ("[T]he [defendant] has simply failed to support its argument with any meaningful measure of factual or legal argument. Courts need not consider cursory arguments of this kind, and the Court declines to do so here.").

Even had Russo developed his statute of frauds argument further, the Court is nonetheless persuaded that the text message qualifies as a signed writing creating an enforceable personal guaranty.

Florida's statute of frauds requires that a guaranty be memorialized in a signed writing by the party to be charged under the guaranty. Fla. Stat. § 725.01(1). Florida courts take an expansive view as to what qualifies as a signed writing that complies with the statute of frauds. See Kolski v. Kolski, 731 So. 2d 169, 171 (Fla. 3d DCA 1999) ("To satisfy the statute, a note or memorandum may take almost any possible form."); Heffernan v. Keith, 127 So. 2d 903, 904 (Fla. 3d DCA

17

1961) (finding that a telegram constituted a note or memorandum confirming a prior agreement).

Florida's Electronic Signatures Act expressly permits that "[u]nless otherwise provided by law, an electronic signature may be used to sign a writing and shall have the same force and effect as a written signature." Fla. Stat. § 668.004. Electronic signatures are defined as "any letters, characters, or symbols, manifested by electronic or similar means, executed or adopted by a party with an intent to authenticate a writing." Fla. Stat. § 668.003(4). Florida has also enacted the Uniform Electronic Transaction Act ("UETA"), which facilitates electronic transactions consistently with other law. Fla. Stat. § 668.50(6)(a). The UETA provides that

    (a)  A record or signature may not be denied legal effect or enforceability solely because the record or signature is in electronic form.

    (b)  A contract may not be denied legal effect or enforceability solely because an electronic record was used in the formation of the contract.

    (c)  If a provision of law requires a record to be in writing, an electronic record satisfies such provision.

    (d)  If a provision of law requires a signature, an electronic signature satisfies such provision.

Fla. Stat. § 668.50(7)(a-d). Florida's UETA only applies to transactions between consenting parties; "[w]hether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." Fla. Stat. § 668.50(5)(b). Finally, Florida's UETA also accounts for electronic signatures and electronic records:

> (a)  An electronic record or electronic signature is attributable to a person if the record or signature was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

> (b)  The effect of an electronic record or electronic signature attributed to a person under paragraph (a) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law.

Fla. Stat. § 668.50(9)(a-b).

Other courts applying Florida law have found that signed emails are sufficient to comply with Florida's statute of frauds. See Bellinzoni, S.R.L v. Bell Italy Sol. Corp., No. 6:18-cv-1971-ACC-GJK, 2019 WL 5295121, at *3 (M.D. Fla. June 24, 2019) (finding that emails, a price sheet, and accompanying documents attached to the complaint were

sufficient to survive a motion to dismiss for failure to comply with Florida's statute of frauds"); U.S. Distribs., Inc. v. Block, No. 09–21635–CIV, 2009 WL 3295099, at *5 (S.D. Fla. Oct. 13, 2009) ("The Court finds that the e-mails, several of which are signed by the Defendant and the Plaintiff's alleged agents, attached to the complaint meet the writing requirement of the statute of frauds.").

Courts have also acknowledged that signed text messages can suffice as signed writings under the statute of frauds. See e.g., Taxinet Corp. v. Leon, No. 16-24266-CIV, 2020 WL 6882205, at **3-4 (S.D. Fla. Nov. 24, 2020) (discussing that certain text messages were insufficient to concretely establish a joint venture agreement that satisfied Florida's statute of frauds because they were not signed); Craig v. B. Riley FBR, Inc., No. 3:19-CV-0058-G, 2020 WL 6889018, at *11 n. 8 (N.D. Tex. Nov. 23, 2020) ("The court also notes that, although the text messages between Rosiak and Craig are a "writing," the messages are not "signed" and do not contain all material terms of the alleged oral contract and, therefore, do not satisfy the Texas statute of frauds."); Tayyib Bosque, Corp. v. Emily Realty, LLC, No. 17-CIV.- 512(ER), 2019 WL 2502494, at *6 (S.D.N.Y. June 17, 2019) ("The Statute of Frauds requires Bosque to prove that LaFrieda

20

signed the text messages. An electronic record can be considered an adequate writing but only if it is signed. . . . Accordingly, Bosque fails to establish a crucial element under the Statute of Frauds and did not have a valid commission contract.") (internal citations omitted).

Here, the Court finds that Russo's text message is a signed writing that complies with Florida's statute of frauds. In enacting the UETA and the Electronic Signatures Act, the Florida Legislature has expressed its intent to treat electronic and traditional agreements equally under the law. "I [G]eorge Russo" expressly identifies Russo as the author, guarantor, and signatory of the promise memorialized in the text message. This typewritten phrase is a clear collection of letters and characters executed by Russo with an intent to authenticate the writing. See Fla. Stat. § 668.003(4) (defining "signed writing" under Florida's Electronic Signatures Act). His guaranty contained the essential material terms that he sought to be bound by in exchange for BrewFab's continued performance. As such, Russo's signature in the text message has "the same force and effect as a written signature," Fla. Stat. § 668.004, and satisfies Florida's statute of frauds.

Having found that the text message suffices as a signed writing, the Court need not address BrewFab's arguments regarding statutory exceptions. Therefore, summary judgment for BrewFab is appropriate on this claim.

Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1)   Defendant George Russo's Motion for Summary Judgment (Doc. # 75) is **DENIED**.

(2)   Plaintiff BrewFab, LLC's Cross-Motion for Summary Judgment (Doc. # 76) is **GRANTED** as set forth herein.

(3)   As BrewFab, LLC's remaining claims against 3 Delta will proceed to trial, the Court will not enter judgment under Federal Rule of Civil Procedure 54(b) on the personal guaranty claim at this time.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 14th day of January, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE